UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| BRUCE DANIELSON, | 4:18-CV-04039-RAL |
| :--- | :--- |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING IN PART MOTION FOR PROTECTIVE ORDER |
| MIKE HUETHER, | |
| Defendant. | |

In December 2018, this Court entered an Opinion and Order Granting in Part Defendants' Motion to Dismiss. Doc. 22. In that 44-page Opinion and Order, this Court explained why pro se Plaintiff Bruce Danielson had a claim under 42 U.S.C. § 1983 for alleged First Amendment retaliation against former Sioux Falls Mayor Defendant Michael Huether and why Danielson had stated no viable claims against other Defendants he named—David Pfeifle, Marty Jackley, Heather Hitterdal, City of Sioux Falls, State of South Dakota, and John Doe—for alleged civil conspiracy and alleged discriminatory treatment of Danielson. Doc. 22. The parties have since begun discovery, and this Court has issued an order quashing some of Danielson's subpoenas. Now pending before this Court is a motion for reconsideration by Danielson and a motion for a protective order by the State of South Dakota (State) and the City of Sioux Falls (City).

I.  **Motion for Reconsideration of Order Quashing Subpoenas**

On December 27, 2019, the City filed a motion to quash subpoenas Danielson served on non-parties Greg Neitzert, Stacy Kooistra, and Shawn Pritchett. Doc. 52. Neitzert is an elected

1

member of the Sioux Falls City Council and maintains a website with the address www.sfmeetings.org. Doc. 54 at ¶¶ 1–2. Although the website used to be open to the public, Neitzert installed a login wall in July 2019, in part because he no longer has time to maintain the site. Doc. 54 at ¶ 4. According to Neitzert's affidavit, all of the information available on his website is publicly available on the official website for the City Sioux Falls. Doc. 54 at ¶ 3. Stacy Kooistra is the City Attorney for Sioux Falls while Shawn Pritchett is the City's Finance Officer.

The subpoena to Neitzert listed fifteen subpoena production topics, including "Documentation of all identities, such as IP address or user ID or email address, who either did, or were authorized to, or attempted to access the website www.sfmeetings.org from April 14th, 2015 to present including metadata identities as required to establish relationships to identify users;" "Any communications with any persons referencing either directly or indirectly the website www.sfmeetings.org;" and "Any communications with any person referencing an actual or potential campaign contribution to candidate Greg Neitzert, future political roles for Greg Neitzert, or desire to contribute to or support a campaign by Greg Neitzert as candidate for political office." Doc. 53-1 at 9–10.

The subpoenas served on Kooistra and Pritchett were identical. They listed twenty-nine production topics including "All physical assault or stalking complaints by city employees during the tenure of Mike Huether and the outcome;" "All documents pertaining to policies governing the ownership of intellectual property created as a result of City employment including ownership of letters, records, emails, legal records, notes, patents, calculations and other intellectual property;" and "Copies of any communications, including metadata and contents, with member [sic] of the Attorney General's office or DCI Agents regarding" thirteen different people from April 14th, 2015, to November 10th, 2015. Doc. 53-2 at 8–10.

The City argued that the subpoena to Neitzert should be quashed in its entirety because the production topics were burdensome and irrelevant to the issues remaining before the Court. Kooistra and Pritchett made this same argument about production topics 4, 5, 6, 9, 10, 11, 12, 13, 18, 19, and 29.[1]

This Court granted the motion to quash in a January 22, 2020 order, finding that Danielson had failed to respond to the motion within the twenty-one day period and that the Neitzert subpoena and certain topics in the Kooistra and Pritchett subpoenas were unduly burdensome and irrelevant. Doc. 55. On January 23, 2020, the clerk of court filed Danielson's nineteen-page "Objection" to the motion to quash. Doc. 57. The certificate of service included at the end of Danielson's objections says that Danielson placed the document in the mail on January 21, 2020. Doc. 57 at 19.

In early February of 2020, Danielson filed a motion under Federal Rule of Civil Procedure 60(b) asking this Court to reconsider its order quashing Danielson's subpoenas. Doc. 62. Among other things, Danielson argued that his objections were timely because he mailed them on January 21, 2020. This argument is incorrect. The City mailed Danielson the motion to quash the subpoenas on December 27, 2019.[2] Doc. 64 at 2; Doc. 52 at 2; Doc. 53 at 7; Doc. 65-11. Service of the motion to quash was complete upon mailing. Fed. R. Civ. P. 5(b)(2)(C); Treanor v. MCI Telecomms. Corp., 150 F.3d 916, 918 (8th Cir. 1998). Under Civil Local Rule 7.1, Danielson had twenty-one calendar days to serve and file a response to the motion to quash. D.S.D. Civ. LR 7.1(B) ("On or before 21 calendar days after service of a motion and brief, unless otherwise

---

[1] Kooistra and Pritchett have responded and produced documents under all the other topics except topic 21. They intend to respond to topic 21 if and when Danielson stipulates to a protective order.
[2] The certificate of service attached to the motion to quash says the motion was mailed on December 26, 2019, but one of the City's briefs says the motion was mailed on December 27, 2019.

specifically ordered by the court, all opposing parties must serve and file a responsive brief...."). The day of mailing does not count, Fed. R. Civ. P. 6(a)(1)(A), so Danielson's response would normally have been due on January 17, 2020. Because the City served Danielson with the motion by mail, however, Danielson had three additional days to file his response. Fed. R. Civ. P. 6(d). Since January 20, 2020, was a legal holiday, Danielson's response was due on January 21, 2020. Fed. R. Civ. P. 6(a)(1)(B) & (C). Although Danielson argues that his response was timely because he mailed it on January 21, 2020, filing was not complete until the clerk received his response. See McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995) ("When papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of them."). The clerk of court did not receive Danielson's response until January 23, 2020, Doc. 57, which means the response was untimely, see Torras Herreria y Construcciones, S.A. v. M/V Timur Star, 803 F.2d 215, 216 (6th Cir. 1986) ("Filings reaching the clerk's office after a deadline are untimely, even if mailed before the deadline."). As this Court stated in its order granting the motion to quash, Danielson's failure to file a timely response is a sufficient reason to grant the motion. Nevertheless, this Court has considered Danielson's arguments about why he considered the requests in the subpoena as relevant, and nothing in his response or his motion for reconsideration convinces this Court that the subpoenas were relevant and not unduly burdensome. As such, Danielson's motion for reconsideration is denied.

## II.    Motion for Protective Order

The State and the City filed a Motion for Protective Order under Rules 26(c) and 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure. Doc. 58. They seek a protective order limiting the disclosure of certain documents and argue that other documents Danielson requests are privileged. Danielson filed a response to the motion for a protective order, Doc. 66, as well as

a surreply to the motion, Doc. 72-1. Very recently, he filed a motion to amend his initial response to the motion for a protective order. Doc. 83. This Court grants Danielson's motion to file his amended response and has considered the amended response in ruling on the motion for a protective order.

Rule 26(c) grants a district court authority, for good cause, to issue a protective order and provides a list of potential remedies to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ P. 26(c)(1). These remedies include prohibiting disclosure or discovery and placing limits on the same. Id. Rule 45 states that courts "must quash or modify" subpoenas that "require[] disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." Hahn v. Hunt, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016).

### A. Police Records, Investigative Reports, and Security Camera Locations

The State asks this Court for a protective order concerning Topics 2, 3, and 4 of the subpoena directed to it. Topics 2 through 4 concern the South Dakota Division of Criminal Investigation's (DCI) investigation of Danielson's claim that Huether assaulted him during an April 2015 City meeting in the Carnegie Town Hall meeting room. Doc. 59-1 at 7–8. The City of Sioux Falls asks for a protective order for Topic 21 of the subpoena directed to it. Topic 21 seeks "[b]lueprints of Carnegie Library and building showing locations of all cameras which were installed as of April 14th, 2015." Doc. 53-3 at 11.

The State and City argue that these topics require disclosure of police records, investigative reports, "and/or official documents of the City of Sioux Falls." Doc. 60 at 3–4. According to the

State and City, these topics are protected from disclosure by SDCL §§ 1-27-1.5(5), 23-5-7, 23-5-10, and 23-5-11. Sections 1-27-1.5(5) and 23-5-11 exempt certain information from disclosure to the public under South Dakota's Public Records Act. Mercer v. S.D. Attorney Gen. Office, 864 N.W.2d 299, 304 (S.D. 2015). Section 1-27-1.5(5) exempts

> [r]ecords developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, if the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training.

SDCL § 1-27-1.5(5). Section 23-5-11 exempts "confidential criminal justice information," SDCL § 23-5-11, which is defined in relevant part as "criminal identification information compiled pursuant to chapter 23-5, criminal intelligence information, criminal investigative information,[3] . . . and criminal justice information otherwise made confidential by law," SDCL § 23-5-10(1). In Mercer v. South Dakota Attorney General Office, the Supreme Court of South Dakota held that §§ 1-27-1.5(5) and 23-5-11 prohibited disclosure of records from the DCI's investigation of the death of a public official. 864 N.W.2d at 304.

Danielson's claims are predominantly federal, so federal common law governs any assertion of privilege by the State and City. Lykken v. Brady, No. CIV. 07-4020-KES, 2008 WL 2077937, at *4 (D.S.D. May 14, 2008); Ponce v. City of Onawa, No. 1:03-cv-30064, 2004 WL 7332831, at *1 (S.D. Iowa Oct. 6, 2004). But state privileges are still relevant. Lykken, 2008 WL 2077937, at *4. Indeed, courts have entered protective orders limiting the disclosure of police

---

[3]"Criminal investigative information" means "information associated with an individual, group, organization, or event compiled by a law enforcement agency in the course of conducting an investigation of a crime or crimes. This includes information about a crime or crimes derived from reports of officers, deputies, agents, informants, or investigators or from any type of surveillance." SDCL § 23-5-10(4).

6

records and investigative files based on state privileges or statutes. See <u>Zokaites v. City of Sioux Falls</u>, 19-cv-4183-KES (D.S.D. 2019), Docs. 12, 18 (text orders granting a protective order for Sioux Falls Police and Animal Control records based on SDCL § 1-27-1.5(5)); <u>Ponce</u>, 2004 WL 7332831, at *3 (limiting disclosure of a law enforcement officer's investigative file to the parties in the case given Iowa's qualified privilege attending such files). Courts have also granted protective orders based on public safety concerns. <u>Blair v. City of Omaha</u>, No. 8:07CV295, 2011 WL 148120, at *3 (D. Neb. Jan. 18, 2011) (limiting disclosure of a police manual over concerns that the manual's release would compromise police operations and endanger public safety).

Good cause exists for the protective order requested here. Importantly, the order will not prejudice Danielson's ability to prosecute his claims; it allows Danielson access to the records he seeks and permits him to share these records subject to the protective order with witnesses, consultants, experts, and his attorney should he chose to hire one. Doc. 58-1 at 2. At the same time, the order protects the State's interest in keeping police records and investigative reports confidential and the City's interest in maintaining security in the Carnegie Building. That is the appropriate balance in this case.

### B. Attorney-Client Privilege

Danielson's subpoena to the State requests the following:

> 5. Any communications and/or communications records such as phone call logs or email logs or scheduling notes between persons identified as relevant in #2[4] above including any reference to Bruce Danielson, or investigation of the allegations.
> 6. Any information referencing Danielson's complaint and investigation provided to Mike Huether's attorney James Moore or other members of Woods Fuller law firm.

---

[4]Topic 2 lists the following as "relevant persons": Bruce Danielson, Lorie Hogstad, Michael Huether, Jon Klemme, Brett Mathison, Sue Quanbeck Etten, John Schaeffer, Marty Jackley, David Pfeifle, Jim Severson, James Moore, Doug Barthel, Heather Hitterdal, and employees of the Attorney General's Office, including the DCI. Doc. 59-1 at 7.

Doc. 59-1 at 8. Danielson's subpoena lists the timeframe for his request as running from April 14, 2015, to the present. Doc. 59-1 at 4.

The City and State argue that the attorney-client privilege prevents disclosure of communications to or from attorneys James Moore and David Pfeifle requested in Topic 5[5] as well as the communications Danielson seeks in Topic 6. James Moore is the defense attorney in this case. He represents Huether, but he also represented David Pfeifle, Marty Jackley, Heather Hitterdal, the City of Sioux Falls, and the State before this Court entered an opinion and order dismissing Danielson's claims against these parties. David Pfeifle was the City Attorney when Huether allegedly assaulted Danielson.

Generally speaking, the attorney-client privilege prevents disclosure of confidential communications between a client and his or her attorney "made for the purpose of facilitating the rendition of legal services to the client." United States v. Yielding, 657 F.3d 688, 707 (8th Cir. 2011). Danielson argues that the State and City have not met their burden to show that the attorney-client privilege applies to the requested communications. See Fed. R. Civ. P. 26(b)(5)(A)(ii) & 45(e)(2)(A)(ii). The information a party must provide when asserting the attorney-client privilege can vary depending on the scope and nature of the discovery request. 8 Richard L. Marcus, Federal Practice and Procedure § 2016.1 (3d ed.). Here, Topics 5 and 6 of the subpoena to the State obviously encompass communications protected by the attorney-client privilege. After all, Danielson is requesting communications between the State and its attorney Moore about this lawsuit. See In re Bieter Co., 16 F.3d 929, 938 (8th Cir. 1994) (explaining that when a client communicates with outside counsel, "it is prima facie committed for the sake of legal

---

[5]The State will provide the communications between the other "relevant persons" listed in Topics 2 and 5 subject to a protective order.

advice and is, therefore, within the privilege absent a clear showing to the contrary" (cleaned up and citation omitted)). Under these circumstances, this Court can rule on the attorney-client privilege question without requiring the State to provide information about each communication it had with Moore for the last five years. Communications to or from Pfeifle are a different matter. The subpoeana is directed to the State, and neither the State nor the City has explained why the State possesses communications about Danielson to or from Pfeifle, the City Attorney, that are allegedly protected by the attorney-client privilege. This Court will give the State and City fourteen days from the date of this Opinion and Order to explain why the attorney-client privilege protects any communications between Pfeifle and the State concerning Danielson. Communications by Pfeifle in his role as city attorney with city officials or the attorney representing any city officials would be privileged.

### C. Work-Product Doctrine

Topic 7 of Danielson's subpoena to the State requests "[a]ny information referencing Danielson's complaint and investigation provided to South Dakota Public Assurance." Doc. 59-1 at 8. The South Dakota Public Assurance Alliance (SDPAA) is the risk pool that provides liability coverage to the City's employees. According to the City, the work-product doctrine protects "[c]ommunications between the SDPAA and City employees about Danielson's complaint, which necessarily occurred after Danielson's lawsuit was filed." Doc. 60 at 7–8.

Rule 26(b)(3)(A) codified the work-product doctrine. It states that parties generally "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Such materials may be discovered only if they are otherwise within the scope of discovery, the requesting party shows substantial

9

need for the materials, and the requesting party demonstrates undue hardship in obtaining the materials by other means. Id.

Here, the very description of the documents Danielson seeks in Topic 7 shows that they are protected by the work-product doctrine. Again, Danielson asks for information referencing his complaint, which means that he seeks documents that the City sent its insurer after Danielson filed this suit against the City and some of its employees. Courts agree that the work-product doctrine prevents disclosure of such documents. Minn. Sch. Bds. Ass'n Ins. Tr. v. Emp'rs Ins. Co. of Wausau, 183 F.R.D. 627, 631 (N.D. Ill. 1999) ("Communications to one's insurer made as a consequence of pending litigation are privileged work product." (citation omitted)); Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249, 251 (D.D.C. 1970) ("Reports from the insured to its insurance carrier subsequent to the institution of a suit are in furtherance of and for the purpose of aiding in the defense of its case and in the preparation of its attorney for trial. Such reports are part of the attorney's 'work product' and are precluded from discovery."). Danielson has not shown substantial need for the materials he requests in Topic 7, and the State need not produce them.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Danielson's Motion to Amend Objections to the Defendant's Motion for a Protective Order, Doc. 83, is granted. It is further

ORDERED that Danielson's Motion for Reconsideration, Doc. 62, is denied. It is further

ORDERED that the City and State's Motion for a Protective Order, Doc. 58, is granted except as to the communications between Pfeifle and the State concerning Danielson.

DATED this 3rd day of June, 2020.

BY THE COURT:

/s/ Roberto A. Lange
ROBERTO A. LANGE
CHIEF JUDGE